

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-23-2000

# Nationwide Mutl Ins v. Buffetta

Precedential or Non-Precedential:

Docket 99-1832

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Nationwide Mutl Ins v. Buffetta" (2000). *2000 Decisions.* Paper 225.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/225

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 20, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 99-1832

NATIONWIDE MUTUAL INSURANCE COMPANY

v.

ROSETTA BUFFETTA, ADMINISTRATRIX OF THE
ESTATE OF FRANCESCO MIRIELLO

> Rosetta Miriello Buffetta, Administratrix
> of the Estate of Francesco Miriello,
> Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 98-cv-06200)
District Judge: Honorable Robert F. Kelly

Argued July 17, 2000

Before: MANSMANN, RENDELL, and STAPLETON,
Circuit Judges

(Filed October 20, 2000)

> Vincent A. Guarna, Esq. [ARGUED]
> 4620 Street Road
> Trevose Corporate
>  Center
> Trevose, PA 19053
> Counsel for Appellant
> Rosetta Miriello Buffetta,
> Administratrix of the Estate
> of Francesco Miriello

James C. Haggerty, Esq. [ARGUED]
Swartz, Campbell & Detweiler
1601 Market Street, 34th Floor
Philadelphia, PA 19103
Counsel for Appellee
Nationwide Mutual Insurance
Company

David C. Harrison, Esq. [ARGUED]
Law Offices of David C. Harrison
2100 Arch Street, 5th Floor
Philadelphia, PA 19103-1399
Counsel for Amicus-Appellant
Pennsylvania Trial Lawyers
Association

OPINION OF THE COURT

RENDELL, Circuit Judge.

Appellant challenges the District Court's ruling that Nationwide Mutual Insurance Company ("Nationwide") was not required to make payment of uninsured benefits to or on behalf of appellant in excess of the $25,000 amount stated in the policy limits after an earlier named insured under the policy, her former husband, had elected that amount in writing. An understanding of the facts is necessary to our discussion.

I. STATEMENT OF FACTS

Appellant Rosetta Buffetta (also referred to as Rosetta Miriello) was married to Saverio Buffetta in August 1979. In 1981, Mr. Buffetta obtained an automobile insurance policy, No. 5837B93654, from Nationwide. Sometime thereafter, appellant Rosetta Buffetta became a licensed driver and was added to the policy as such. However, from 1981 to 1994, Mr. Buffetta was the sole named insu red under the policy. The initial limits of liability under the policy were $25,000/$50,000 for bodily injury and $25,000/$50,000 for uninsured motorist coverage.

2

The parties have stipulated to several of the important facts, and we recite them verbatim:[1]

By the terms of a Property Settlement Agreement dated August 8, 1994, Saverio Buffetta retained the automobile insured under the Nationwide Mutual Insurance Company policy.

In October 1994, Rosetta Buffetta filed for divorce from Saverio Buffetta. On October 22, 1994, Saverio Buffetta requested a change in the liability limits of coverage of the Nationwide Mutual Insurance Company policy from $25,000.00/$50,000.00 to $100,000.00/ $300,000.00. On October 22, 1994, Saverio Buffetta signed and dated an Uninsured Motorist Coverage Authorization Form electing to continue and maintain the $25,000.00/$50,000.00 uninsured motorist coverage limit. Effective October 22, 1994, the coverage limits on the policy issued by the Nationwide Mutual Insurance Company were $100,000.00/$300,000.00 in liability coverage and $25,000.00/$50,000.00 in uninsured motorist coverage.

Following the filing of the divorce and the entry of same, Saverio Buffetta and Rosetta Buffetta continued to live at 2343 S. Carlisle Street, Philadelphia, Pennsylvania. Saverio Buffetta and Rosetta Buffetta were divorced March 1, 1995. Saverio Buffetta continued to live at 2343 S. Carlisle Street, Philadelphia, Pennsylvania, until he moved to Italy in 1995. Rosetta Buffetta continues to live at 2343 S. Carlisle Street, Philadelphia, Pennsylvania.

Prior to moving to Italy, Saverio Buffetta transferred title of the automobile insured under the Nationwide Mutual Insurance Company policy to Rosetta Buffetta. The named insured/policyholder identified on the declarations pages of the Nationwide Mutual Insurance Company policy from October 22, 1981 until July 10, 1995 was Saverio Buffetta.

_____

1. The factual narrative is reproduced from paragraphs 12 through 31 of the Stipulation of Facts submitted in the District Court, reprinted at pages 23a-25a of the Appendix.

Upon taking title to the car, Rosetta Buffetta notified the Nationwide Mutual Insurance Company of the divorce and requested that the policy be placed in her name. Effective July 10, 1995, the named insured/policyholder identified on the declaration pages of the Nationwide Mutual Insurance Company policy was changed to Rosetta Buffetta. Effective July 14, 1995, the underwriting/rating status of Rosetta Buffetta was changed from married to unmarried.

Rosetta Buffetta never signed any written authorization requesting uninsured motorist limits lower than bodily injury limits. J. Ferullo was the Nationwide agent who handled all changes and endorsement to the Policy in 1994 and 1995. Mr. Ferullo is deceased and unavailable to provide any testimony regarding this matter.

On February 14, 1997, Francesco Miriello sustained fatal injuries in a motor vehicle accident. The motor vehicle which struck Francesco Miriello was uninsured. At the time of the accident, Francesco Miriello resided with his daughter, Rosetta Buffetta. Following the accident in question, the Estate of Francesco Miriello made claim upon the Nationwide Mutual Insurance Company for recovery of uninsured motorist benefits.

Buffetta contends that Nationwide's liability for uninsured motorist coverage under the policy should not be limited to $25,000, because she never executed a writing for that amount, which is $75,000 less than her $100,000 coverage for bodily injury. She contends that section 1734 of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL") requires her, a "named insured," to have signed a written reduction authorization and that, since she never signed such a written authorization, the policy must be "reformed" so as to permit the same limits for uninsured motorist coverage as for bodily injury.

Nationwide, on the other hand, contends that there can be no reformation because the applicable statutory provision does not provide a remedy for violation of its provisions. Nationwide also argues that the statute has

4

been complied with because a written authorization for the reduction of the uninsured motorist coverage had been executed by the "named insured" of the policy, namely, Mr. Buffetta.2

II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction over this action based upon 28 U.S.C. SS 2201 and 1332(a). Nationwide is a foreign corporation organized and existing under the laws of Ohio. Ms. Buffetta resides in Pennsylvania. We have jurisdiction over this appeal based upon 28 U.S.C.S 1291.

The District Court, exercising diversity jurisdiction in this declaratory judgment action, was obliged to apply the substantive law of Pennsylvania. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-80 (1938). Because there was no reported decision by the Pennsylvania Supreme Court or any other Pennsylvania court addressing the precise issue before it, it was the duty of the District Court to predict how the Pennsylvania Supreme Court would interpret section 1734 of the Pennsylvania MVFRL if presented with this case. See, e.g., Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co., 652 F.2d 1165, 1167 (3d Cir. 1981). In so doing, a federal court can also give due regard, but not conclusive effect, to the decisional law of lower state courts. See, e.g., Burke v. Maassen, 904 F.2d 178, 182 (3d Cir. 1990). The opinions of intermediate appellate state courts are "not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." West v. AT&T Co., 311 U.S. 223, 237 (1940).

We exercise plenary review over the District Court's prediction of Pennsylvania law. See, e.g., Companie des Bauxites de Guinee v. Insurance Co. of N. Am., 724 F.2d 369, 371-72 (3d Cir. 1983). In predicting how the highest

_____

2. We note that amicus curiae briefs were filed in support of the position of appellant by the Pennsylvania Trial Lawyers Association, and in support of the position of appellee by the Pennsylvania Defense Institute. Since they echo essentially the same arguments made by the parties, we will not specifically comment on or refer to their submissions.

court of the state would resolve the issue, we must consider "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 663 (3d Cir. 1980).

III. DISCUSSION

The District Court framed the issue before it as follows:

> Does the failure of the insurer to obtain new uninsured motorist election forms upon the change of the named insured from the husband to the wife following divorce require the reformation of the uninsured motorist coverage limits to the higher liability limits of coverage?

Opinion, September 20, 1999, at 2.

The District Court recited the facts relevant to its discussion, emphasizing Mrs. Buffetta's conduct af ter the policy was changed to her name:

> Nationwide was requested to maintain the same policy for the same vehicle at the same address, but with Rosetta Buffetta now listed as the named insured. She continued to receive billings with coverage listings. She paid the premiums and the policy was renewed at least three times before the accident. At no time did Rosetta Buffetta request any coverage changes.

Id. at 2-3.

The District Court noted that the provisions of the MVFRL relating to the waiver of uninsured motorist ("UIM") coverage, and reduction in coverage amounts, were amended in 1990. The previous provisions had provided that, without a written election, UIM coverage limits would automatically default to the higher liability limits. The 1990 amendments, however, made only the failure to comply with the requirements for total waiver of UIM coverage subject to an automatic default provision, without providing any automatic default or remedy in the section providing for reduction of UIM coverage amounts. The statutory provisions regarding total waiver of UIM coverage, and reduction in coverage, now read as follows:

6

(c.1) Forms of waiver. -- Insurers will print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the form may be witnessed by an insurance agent or broker. Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy will be equal to the bodily injury liability limits . On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists. Any person who executes a waiver under a subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.

75 Pa. Cons. Stat. S 1731(c.1) (1996) (emphasis added).

Request for lower limits of coverage:
A named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury.

Id. S 1734.

The District Court examined section 1734 in light of the parties' arguments. Both parties characterized the issue as one of "reformation" of the policy so as to provide Rosetta Buffetta with $100,000 in uninsured motorist coverage rather than the $25,000 of coverage that had been authorized in writing by Mr. Buffetta.

The District Court expressed skepticism as to its ability to reform the policy to the higher UIM limits absent a statutory provision to that effect. It noted that in Salazar v. Allstate Insurance Co., 702 A.2d 1038 (Pa. 1997), and Donnelly v. Bauer, 720 A.2d 447 (Pa. 1998), the Pennsylvania Supreme Court construed certain notice provisions relating to UIM coverage and held that an

7

insured could not obtain reformation of coverage unless the MVFRL specifically provided that remedy. The District Court noted that, while the Pennsylvania legislature provided that a total waiver of uninsured motorist coverage would be ineffective in the absence of a valid rejection form and would automatically default to the bodily injury limits -- thus providing a remedy in that situation -- the statutory section applicable to the instant situation, namely, section 1734, contains no such remedy. However, the District Court did not resolve the matter on this basis, but proceeded to address Nationwide's other argument: that there had been no violation of section 1734 because the section only requires a written authorization request for the lower UIM limits, and Saverio Buffetta, a named insured, had signed such an authorization form. The District Court credited this argument, concluding:

> I find that the change which actually listed her on the declaration pages after the divorce did not require a new election of coverage to be signed in order to continue the same policy coverage. As in the case of Kimball v. Cigna Ins. Co., 660 A.2d 1386 (Pa. Super. 1995), Rosetta Miriello Buffetta was initially listed as a driver under the policy. Under the policy terms, she enjoyed the same status as a named insured. Saverio Buffetta was initially the named insured on the policy when he elected, in writing, the lower limits of uninsured motorist coverage. When Rosetta Miriello Buffetta assumed the policy and became the listed insured, she took no steps to change the policy provisions for more than three years. During that time, she received premium and overage notices and paid premiums every six months. In doing so, she acquiesced in the coverage that had been selected.

Opinion, at 6.

We will affirm the District Court's order essentially for the reasons stated therein.3 We note that while the issue of

_____

3. We note, while not necessary to our ruling, that we do not subscribe to the District Court's view that Ms. Buffetta enj oyed "named insured" status when she was merely a driver under the policy. The policy clearly

8

"reformation" of the policy is implicated by the parties' arguments and that the pronouncements of the Pennsylvania Supreme Court on this issue appear to favor Nationwide's position, we agree with the District Court's analysis that there was no section 1734 violation, and thus we need not add our voice to the ongoing discussion of policy reformation in the Pennsylvania courts.4 We base our affirmance on the unique set of facts presented and the absence in the statutory language of any requirement for a new written authorization to be submitted by Ms. Buffetta in this factual setting.

We start with the statutory language we have quoted above. The statute, by its terms, does not require anything to be done by an insurer to permit the reduction in the amount of UIM coverage under a policy. Rather, section 1734 provides that "a named insured may request in writing the issuance of coverages . . . in amounts equal to or less than the limits of the liability for bodily injury." Unlike section 1731, section 1734 does not dictate that the opportunity for reduction, or a form to that effect, be presented when a policy is issued. It merely provides that

_____

provides that she was an "insured," but she was not listed as a "named insured," and does not appear to even be a "policyholder," as defined. However, the policy was addressed to her insofar as coverage and other obligations are concerned, because she was included in the concept of "you" or "your" under the policy as spouse of the named insured. We view the District Court's statement as incorrect, but do not view it as pivotal to its, or our, reasoning or conclusion.

4. Even as the parties were proceeding toward argument in this case, they provided us with an opinion of the Pennsylvania Superior Court, which in May determined that the absence of a remedy in the section before us, section 1734, prevents reformation, consistent with the Pennsylvania Supreme Court's rulings in Salazar and Donnelly. See Lewis v. Erie Ins. Exch., 753 A.2d 839 (Pa. Super. Ct. 2000). In addition, the parties filed a motion jointly requesting that we certify to the Supreme Court of Pennsylvania the issue of whether there is a remedy for the alleged failure of the insurer to obtain an election of the lower limits of uninsured motorist coverage pursuant to section 1734 under the court's analysis in Donnelly and Salazar. Because our basis for affirmance does not involve resolution of that issue, we will decline to certify the issue as requested.

9

a reduction of this kind may be accomplished, but only by a writing which constitutes a request by a named insured.

Interestingly, the case law that has developed regarding this section, which Ms. Buffetta relies upon, has arisen in a different context. In each case, the insurer has claimed that a reduction was authorized, but the argument has focused on whether there was in fact a signed writing that constituted a valid, effective request of a named insured for the reduction. In the instances in which the insured has been successful, it has been based upon the absence of a valid written request for reduced coverages signed by a named insured. See Nationwide Ins. Co. v. Resseguie, 980 F.2d 226 (3d Cir. 1992) (no reduction where there was no written request signed by a named insured); Motorists Ins. Cos. v. Emig, 664 A.2d 559 (Pa. Super. Ct. 1995) (agent's completion of form did not satisfy statutory requirement for written request of insured); Botsko v. Donegal Mut. Ins. Co., 620 A.2d 30 (Pa. Super. Ct. 1993) (written request for lower coverage ineffective where no evidence that insured was advised of coverage mandated by statute before signing authorization in favor of lesser coverage).

Here, there was a valid written request executed by Saverio Buffetta. The only issue is whether it is binding on Rosetta Buffetta. Given this setting, we agree with the District Court that the Pennsylvania Superior Court's ruling in Kimball v. Cigna Insurance Co., 660 A.2d 1386 (Pa. Super. Ct. 1995), provides the best insight into the probable resolution of this issue by the Pennsylvania courts.

In Kimball, plaintiff was listed as a driver under her father's policy, but her mother was the only "named insured." Her mother executed a form reducing the uninsured motorist coverage limits in 1990. In 1991, plaintiff purchased a vehicle, and the "endorsement" portion of the policy added her as a "named insured." Plaintiff was injured by an uninsured motorist in 1992 and contended that she was not bound by the election that her mother had made for reduced coverage and that, when she was added to the policy after the election, she should have been informed as to the amount of coverage available and required to execute a written request for lower coverage

10

under section 1734. The Pennsylvania Superior Court cited authority from common pleas courts and federal court cases to the effect that one in plaintiff 's position was bound by the writing signed by another named insured. The court noted that one in plaintiff 's position, upon becoming a named insured and receiving an endorsement amending the policy that listed her as a named insured and indicated the amount of coverage, had an obligation to act:

> At bar, albeit the plaintiff was not listed as a"named insured" at the time her mother executed a "sign down" form to reduce uninsured/underinsured coverage, she was a "named insured" when the "endorsement" amending the policy and listing her as a "named insured" was received at the Kimball household. Specifically, the amendment indicated in clear language that the uninsured motorist coverage stood at $100,000 and no higher. However, no action was taken by the plaintiff to rectify this level of coverage. She could have increased coverage under her mother's policy (with accompanying premium increases) or secured her own separate policy should her mother not be amenable to the increased coverage and additional cost associated therewith. The plaintiff took no action on either front.

> Moreover, the policy limits remained in effect for two renewal periods without any effort on the plaintiff 's part to increase coverage beyond the $100,000.00 limit for uninsured/underinsured insurance. Rather, the premiums (at the lower rate) continued to be paid without question or complaint to the Cigna agent about the level of coverage. Under this scenario, as is consistent with 75 Pa. C.S.A. S 1791, the payment of the renewal premiums (which here occurred at least twice while the plaintiff was a "named insured") evidences [the plaintiff 's] actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits . . . selected.

> Accordingly, if the plaintiff did not accept her mother's election, upon receipt of the policy with the lower limit and lower premiums, she could have contacted the insurance company, informed them of

11

the dissatisfaction with the amount of
uninsured/underinsured coverage and requested it be
corrected or obtained another policy on her own.
Instead, the plaintiff accepted the policy with the lower
limits without complaint and permitted payment of the
lower premium without incident. To find that the
plaintiff is not bound by her mother's election and
remaining silent on the issue of increased coverage,
while reaping the benefits of reduced rates, would be to
reward inaction. Here, the plaintiff had the means and
opportunity to avoid any insurance shortfall, but she
took no action to remedy the matter.

Kimball, 660 A.2d at 1388-89.

We realize that the issue before us is not precisely the
situation in Kimball, but, drawing on the Pennsylvania
Superior Court's repeated references to a later named
insured's being bound by having understood the policy
limits and acquiesced in them by paying lower premiums,
we conclude that the instant factual setting is sufficiently
analogous to Kimball to require the same result.5 Ms.
Buffetta asked for the policy to be in her name and received
notices referencing policy limits. She paid premiums based
on those limits that were obviously less than if the

_____

5. Interestingly, the reasoning of one of the cases relied upon by the
Pennsylvania Superior Court could have led it to a different result
(although not one that would follow here). In Groff v. Continental
Insurance Co., 741 F. Supp. 541 (E.D. Pa. 1990), Judge Huyett held that
where one named insured had executed a reduction authorization, but
the other had not, a third person insured under the policy, not a named
insured, would be bound by the reduction. However, the court noted
that a dilemma would be presented if the one actually claiming under
the policy was one of the named insureds. See id. at 548-49. In Kimball,
the Pennsylvania Superior Court did not concern itself at all with the
fact that the plaintiff who was injured and was seeking to be relieved of
the reduction was in fact a named insured who had not executed a form
authorizing the reduction. Here, since the injury was to Ms. Buffetta's
father, the Groff situation is presented. The court in Kimball also relied
upon a case decided by the Court of Common Pleas of York County that
references a "one policy, one coverage" reality, noting that if different
insureds desire different coverages, they should opt to have separate
policies. See Kimball, 660 A.2d at 1387-88 (discussing Liberty Mut. Fire
Ins. Co. v. Lindsey, 3 Pa. D. & C.4th 659 (C.P. York County 1989)).

12

uninsured motorist coverage had been $100,000 instead of the stated $25,000.

While we concede that a policy argument could be made to the effect that a new named insured should always have his or her voice count as to whether a reduced uninsured motorist coverage is requested, this is not evident in the statutory language, nor was it expressed in Kimball. As we noted above, the statute requires only that a waiver form be provided upon issuance of a policy. There is no statutory requirement that an insured be given a reduction authorization form without the insured's having requested one. The statute is written in permissive terms, leaving it to a named insured, who "may" request reduced coverage. The option exists to request such a reduction and, we submit, Kimball was decided on the basis that a later named insured, upon being added to the policy, could have notified the insurance company that she did not want to be bound by another's election of reduced coverage.

We also view the Pennsylvania Supreme Court's reasoning in its recent opinions in Salazar and Donnelly regarding the issue of "reformation" to support the way in which we approach the statute before us. Even where defendant insurance companies have violated the policy notice requirements of the Pennsylvania MVFRL, the Pennsylvania Supreme Court has declined to provide a remedy for the insured by, for example, construing the policy against the insurer. Instead, the court has adhered strictly to the statutory language, and, where no remedy is provided, it has refused to create one. See Salazar, 702 A.2d at 1044; Donnelly, 720 A.2d at 454. 6 As a federal court

_____

6. Judge Caputo of the District Court for the Middle District of Pennsylvania recently examined the difference between the requirements for waiving, and for reducing, UIM coverage and noted this trend as well:

> Recent decisions by the Supreme Court of Pennsylvania have suggested an unwillingness on the part of the State's high court to entertain statutory interpretations that depart from the letter of the
> text, even where the plaintiff is left without redress for an injury
> under the statute.

Leymeister v. State Farm Mut. Auto. Ins. Co., 100 F. Supp. 2d 269, 272 n.3 (M.D. Pa. 2000) (citing and discussing Donnelly, 720 A.2d at 453-54, and Salazar, 702 A.2d at 1044).

13

sitting in diversity, we should be especially reluctant to create new rights that neither the state legislature nor the state courts have seen fit to recognize. See , e.g., Keystone Aeronautics Corp. v. R.J. Enstrom Corp., 499 F.2d 146, 147 (3d Cir. 1974) (noting that "our assigned role is to predict and not to form state law").

We note, in addition, that the Salazar and Donnelly opinions express concern for policies implicated by the issue before us, namely, the legislative concern over the increasing costs of automobile insurance, which the Pennsylvania Supreme Court in Donnelly characterized as "the public policy which is to be advanced when interpreting the statutory provisions of the MVFRL." Donnelly, 720 A.2d at 452. In reasoning that it would not provide a remedy not specifically set forth in the MVFRL, the Donnelly court relied in part on policy considerations:

> If this Court were to fashion a remedy not expressly provided for in the MVFRL, this Court would essentially contravene the cost containment policy behind the MVFRL because allowing appellants the full tort coverage they seek would result in giving appellant something for which no individual has paid, which in turn, would result in insurance companies passing on this extra cost to all other insureds.

Id. at 454. As we have noted, the Pennsylvania Superior Court in Kimball was similarly concerned, as we must be here, with this policy by ruling that the insured should receive the coverage for which she paid.

Accordingly, we predict that the Pennsylvania Supreme Court would hold that where the new named insured was covered by the existing policy when the written reduction was effected, and became a named insured with ample opportunity to alter the coverage under the policy, having received ongoing notice of the amount of coverage under her policy, and having paid premiums that took such coverage limits into account, she was bound by the coverage choices made by the previous named insured under the policy.

Accordingly, we will AFFIRM the order of the District Court.

14

STAPLETON, J., dissenting:

I respectfully dissent.

In order to fashion a rational scheme from the Pennsylvania statutes pertaining to voluntary uninsured/under insured motorist coverage, I predict that the Supreme Court of Pennsylvania would hold that "[u]nder 75 Pa. Cons. Stat. S 1731(a) (1997), the amount of UM coverage is automatically equal to the bodily injury of a policy unless the insured effectively exercises the option to lower or waive such coverage." Travelers Indem. Co. of Illinois v. DiBartolo, 171 F.3d 168, 170 (3d Cir. 1999). Further, I think it clear that in order for there to be an effective exercise of the option to lower the UM coverage, there must be a written request signed by "a named insured." 75 Pa. Cons. Stat. Ann. S 1734 (1999). The more difficult issue presented is how these principles would be applied by the Pennsylvania Supreme Court in the factual setting of this case, one that must be quite common.

Prior to July 10, 1995, Saverio Buffetta was the sole named insured under Nationwide's policy No. 5837B93654. While he was the named insured, he elected in writing to have UM coverage lower than his bodily injury limits. On July 10, 1995, he ceased to have any interest in the policy, and Rosetta Buffetta, having purchased a car from Saverio and having orally requested continuation of the insurance coverage on that vehicle, became the sole named insured. Because a central purpose of the statutory scheme is to focus the attention of a real party in interest on the issue of how much UM coverage should be secured, I believe the Pennsylvania Supreme Court would hold that Nationwide's responsibilities to Rosetta were the same as they would have been had she applied for a new policy, given that she signed neither a waiver nor a reduction form. I would hold that Rosetta's UM coverage is equal to her bodily injury coverage.

I find this situation materially different from that involved in Kimball, where a daughter became an additional named insured on her mother's policy and her mother's earlier election of reduced UM coverage continued to be the effective UM coverage limits of the mother's policy.

15

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit