**William R. DUNCAN, Sr. and Nancy L. Duncan, h/w, Plaintiffs**

**v.**

**ST. PAUL FIRE & MARINE INSURANCE CO., F/K/A North Brook National Insurance Co., Defendant**

No. 4:CV–00–1353.

United States District Court, M.D. Pennsylvania.

Feb. 7, 2001.

Anthony Stefanon, Harrisburg, PA, for Plaintiffs.

Henri Marcel, James B. Burns, Deasey, Mahoney & Bender, Ltd., Philadelphia, PA, for Defendant.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On July 18, 2000, plaintiffs William R. Duncan, Sr. and Nancy L. Duncan (the Duncans) commenced this action with the filing of a complaint for declaratory judgment in the Court of Common Pleas for Dauphin County. The Duncans asked the court to declare that they were entitled to $1 million in uninsured motorist (UM) coverage under an insurance policy issued by defendant St. Paul Fire & Marine Insurance Co., f/k/a North Brook National Insurance Co. (St.Paul).

The case was removed to this court on July 31, 2000. On August 11, 2000, St. Paul filed an answer to the Duncans' complaint. Before the court is St. Paul's motion for judgment on the pleadings, which seeks a declaration that the Duncans are entitled to only $35,000 in UM coverage. As agreed by counsel at the initial case management conference, we will treat St. Paul's motion as a cross-motion, in that we may enter judgment in favor of either party on the basis of that single motion.

### DISCUSSION:

### I. JUDGMENT ON THE PLEADINGS

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). A motion for judgment on the pleadings is analyzed under the same standard as a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *Chovanes v. Thoroughbred Racing Association,* 2001 WL 43780, *1 (E.D.Pa. January 18, 2001); *DeBraun v. Meissner,* 958 F.Supp. 227, 229 (E.D.Pa.1997). The primary difference is that a Rule 12(c) motion is filed after an answer while a Rule 12(b)(6) motion is filed before an answer.

*Prima v. Darden Restaurants, Inc.,* 78 F.Supp.2d 337, 341–42 (D.N.J.2000).

A motion to dismiss under Rule 12(b)(6) admits the well-pleaded allegations of the complaint, but denies their legal sufficiency. *Hospital Building Co. v. Trustees of the Rex Hospital,* 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). In reviewing a motion to dismiss under 12(b)(6), the court must accept as true all factual allegations of the complaint and draw all reasonable inferences in the light most favorable to the plaintiff. *Board of Trustees of Bricklayers and Allied Craftsmen Local 6 of New Jersey v. Wettlin Assoc., Inc.,* 237 F.3d 270, 271 (3d Cir. 2001); *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). The court looks only to the facts alleged in the complaint and any attachments, without reference to any other parts of the record. *Jordan,* 20 F.3d at 1261. "[A] case should not be dismissed unless it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations." *Id.* (citing, *inter alia, Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Whether a plaintiff will ultimately prevail is not a consideration for review of a motion under Rule 12(b)(6). *Nami,* 82 F.3d at 65.

### II. STATEMENT OF FACTS

As is appropriate in a motion for judgment on the pleadings, St. Paul does not dispute the facts alleged by the Duncans in their complaint. On May 16, 1997, while Mr. Duncan was operating a 1985 Chevrolet Truck owned by his then employer, Covenco, Inc., he was involved in an automobile accident with a 1995 Dodge Neon sedan owned by Jennifer Abel. At the time of the accident, the Dodge was uninsured; it was not covered by liability insurance or self-insurance as required by the Pennsylvania Motor Vehicle Financial Responsibil-

ity Law ("MVFRL"), 75 Pa.C.S.A § 1701 et seq.

The Chevrolet operated by Mr. Duncan was insured under a North Brook insurance policy [1] issued to Covenco (the policy). The policy provided for a maximum of $1 million dollars of bodily injury coverage, and gave the policyholder the options of both UM coverage and underinsured motorist (UIM) coverage. As the policyholder, Covenco was entitled to both UM coverage and UIM coverage in amounts less than or equal to the bodily injury limit of $1 million. Covenco elected UM coverage of $35,000 and also UIM coverage of $35,000. The policy included an option to reject UM benefits and an option to reject UIM benefits. These options were presented on the same page of the policy application.

### III. ANALYSIS

The two provisions of the MVFRL that the Duncans cite are § 1731(c.1) and § 1734. § 1731(c.1) reads:

§ 1731. Availability, scope and amount of coverage

(c.1) Form of waiver.—Insurers shall print the rejection forms required by subsections (b) and (c) on *separate sheets* in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. *Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits.* On policies in which either unin-

sured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists. Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.

75 Pa.C.S.A. § 1731(c.1) *(emphasis added)*. Under this section, the insurer is required to provide the form for the rejection of UM coverage and the form for the rejection of UIM coverage on two separate sheets of paper. If the rejection forms are not on separate pages, then the forms are void. In that situation, both the UM coverage and the UIM coverage is equal to the bodily injury liability limit of the policy.[2]

§ 1734 of the MVFRL reads:

§ 1734. Request for lower limits of coverage

A named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury.

§ 1734 focuses on requests for lower limits of UM and UIM coverage *Id.* Although § 1731 is mentioned in the statute, § 1734 does not explicitly restate any of the requirements of § 1731(c.1).

The Duncans' complaint alleges that, because the two rejection forms were printed on the same page of the application, the forms are invalid under § 1731(c.1). They further argue that § 1731(c.1) expressly provides that when a UM coverage rejection form is void, the

---

1. St. Paul admits that it is the lawful successor to North Brook National Insurance Company with regards to its obligations under the policy.

2. § 1731(c.1) states that if *any* rejection form is invalid, the UM or UIM coverage, "or both, if the case may be," shall be equal to the

bodily injury liability limit under the policy. When both the UM and UIM rejection forms are on the same page, *both* forms are invalid, and therefore a policyholder is entitled to bodily injury liability limit for *both* UM and UIM coverage.

policyholder is entitled to UM benefits equivalent to the bodily injury liability limit of the policy. Therefore, they contend that they are entitled to $1 million in UM coverage.[3]

St. Paul asserts that the requirements of § 1731 do not apply when an applicant requests lower limits of coverage rather than rejects the coverage altogether. Thus, regardless of whether the UM and UIM rejection forms are void for being on the same page of the application, the Duncans are not entitled to the bodily injury policy limit in UM coverage because, instead of totally rejecting UM coverage, Covenco elected UM coverage in a lesser amount than $1 million.

In support of its position, St. Paul cites a Pennsylvania Superior Court case, *Lewis v. Erie Insurance Exchange*, 54 Conn.App. 387, 753 A.2d 839 (2000). It would be difficult to find a case more on point. In *Lewis*, Erie issued Lewis an automobile liability insurance policy. Lewis elected maximum bodily injury liability coverage of $500,000 per person and $500,000 per accident, and $50,000 per person and $100,000 per accident in UM and UIM coverage. In this policy, the UM and UIM rejection forms were printed on the same piece of paper.

Lewis's son, an insured under the Lewises' policy, was injured in an automobile accident. Lewis and his wife and son filed an action for a declaratory judgment with the Court of Common Pleas, arguing that because the rejection forms were printed on the same piece of paper, they should be entitled to an amount equal to the bodily injury liability limit of the policy. Erie argued that the rule requiring that rejection forms be on separate sheets of paper did not apply where the policyholder elected a reduced amount of UM/UIM coverage pursuant to § 1734 rather than wholly rejected UM/UIM benefits pursuant to § 1731(c.1). The Court of Common Pleas, ruling on a motion for judgment on the

pleadings, found for the Lewis family. 1998 WL 1073920, *2 (Pa.Com.Pl. December 11, 1998). It stated that "an insurer must 'strictly comply' with section 1731 of the MVFRL, 75 Pa.C.S.A. § 1731, in order for an election of lower UM and UIM coverage limits under section 1734 to be valid." *Id.* (citing *National Union Fire Insurance Co. v. Irex Corp.*, 713 A.2d 1145, 1154 (Pa.Super.1998)).

The Superior Court reversed the order of the Court of Common Pleas. It characterized the relationship of § 1731 to § 1734 in the context of reduction of coverage as "one of first impression." *Lewis*, 753 A.2d at 846. The Superior Court found that Erie's application complied with the requirements of § 1734 and that § 1734 did not incorporate the technical requirements of § 1731(c.1). Discerning the plain meaning of § 1734, it determined that it requires only that a request for reduced coverage be in writing, and that the section contains no standards concerning the form that is used for a reduction of coverage. The Superior Court found the words of § 1734 to be clear and unambiguous, and stated that because the words were such, "we cannot disregard them under the pretext of pursuing the spirit of the statute." *Id.* at 850.

Assuming that an ambiguity in § 1734 did exist, the Superior Court next examined the legislative intent of the MVFRL. It cited the 1990 amendments to the MVFRL in that the amendments indicate that "the legislative concern over the increasing costs of automobile insurance is the public policy which is to be advanced when interpreting the statutory provisions of the MVFRL." *Id.* (quoting *Rump v. Aetna Casualty and Surety Co.*, 551 Pa. 339, 710 A.2d 1093, 1096 (1998)). The message of the 1990 amendments to be wary of insurance costs coupled with the fact that there was no express legislative intent to incorporate § 1731 into § 1734

---

**3.** The Duncans are asking for $1 million in UM coverage only, because the automobile with which Mr. Duncan's car collided was uninsured, not underinsured.

compelled the Superior Court to find for Erie and against the Lewis family. The message of *Lewis* is that in a case where an applicant chooses a reduction of UM or UIM coverage rather than rejecting the coverage outright, the fact that an insurance application violates § 1731 by presenting its rejection forms on the same page is irrelevant.

As St. Paul's states in its brief, the facts alleged by the Duncans in the instant case are "a mirror image" of the facts in *Lewis.* (Defendant's Brief at 6.) As with the automobile in *Lewis,* the car that Mr. Duncan was driving was insured under an automobile policy that utilized a form that presented options for rejection of UM and UIM on the same sheet of paper. Neither Covenco nor Lewis rejected UM or UIM coverage; both of them elected coverage in amounts less than the bodily injury liability limit. The Duncans, as did the Lewises, argue that they should receive the bodily injury liability limit because the policy application did not conform to § 1731. As in *Lewis,* it is undisputed that the policy complies with the requirement of § 1734 that an option for reduction of coverage be in writing. It would seem clear, then, that *Lewis* controls the disposition of the instant case.

The Duncans disagree. In support of their position, they argue that two Pennsylvania decisions cast doubt upon *Lewis.* First, they cite a post-*Lewis* Pennsylvania Supreme Court case, *Winslow–Quattlebaum v. Maryland Insurance Group,* 561 Pa. 629, 752 A.2d 878 (2000). *Winslow–Quattlebaum* involved an insurance policy application which presented an option to reject UIM coverage on the same page as an option to reject stacked UIM coverage. Plaintiff-policyholder Winslow–Quattlebaum elected to reject both UIM coverage and stacked UIM coverage. After Winslow–Quattlebaum was injured in an accident with an underinsured vehicle, she filed a declaratory judgment action against the insurer seeking UIM benefits notwithstanding her express rejection of both UIM benefits and stacked UIM coverage. She claimed that the policy violated § 1731(c.1) because the options to reject UIM coverage and stacked UIM coverage appeared on the same page. Her position was that in order for the policy to have complied with § 1731(c.1), the option to reject UIM coverage must have appeared *alone* on a separate piece of paper.

The Court of Common Pleas found for the insurer because Winslow–Quattlebaum signed the option to reject UIM coverage. The Superior Court reversed, finding that the application was void because the option to reject UIM coverage did not appear by itself on a separate sheet.

The Supreme Court reversed the order of the Superior Court. Interpreting § 1731(c.1), it found Winslow–Quattlebaum's position to be inaccurate:

> There is nothing in the language of section 1731(c.1) to suggest that the required rejection statement for UM or UIM coverage must stand alone on a page without any other writing. Rather, the plain language of this section merely requires that the rejection statement for subsection (b)(UM) coverage appear on a page separate from the rejection statement for subsection (c)(UIM) coverage. Here, the form for waiving UM coverage was on a separate page from the form waiving UIM coverage, thereby complying with section 1731(c .1).

*Id.* at 880–81. The court further stated that the MVFRL included no technical requirements regarding the separation or isolation of the option to reject stacked UM or UIM benefits. *Id.* at 881.

The Duncans cite language in *Winslow–Quattlebaum* that states that "[i]n order to be valid, UM or UIM rejection forms must comply with the requirements of section 1731(c.1)." *Id.* at 882. Referring to the instant case, they state that "[t]he problem with the Supplemental Auto Application ... utilized by Defendant in this case is that the UM election/rejection is lumped together on the same page with the UIM

election/rejection which is page 3 of the Defendant's form... Based on the analysis of the Supreme Court in *Winslow–Quattlebaum,* this form is invalid." (Plaintiff's Brief at 3.)

We find that this argument lacks merit. The Duncans argue that *Winslow–Quattlebaum* shows that *Lewis* is flawed. In fact, *Winslow–Quattlebaum* is not inconsistent with *Lewis*. *Lewis* held that even if an insurance application violates § 1731(c.1) by placing the options to reject UM and UIM coverage on the same page, the statutory remedy of § 1731(c.1) does not apply if a policyholder chooses to elect UM or UIM coverage in a reduced amount rather than completely rejecting the coverage. *Winslow–Quattlebaum* held that while § 1731(c.1) requires that the options to reject UM and UIM coverage be placed on separate pages, it does not require that the options to reject UM and UIM coverage be placed *alone* on a page without any other writing. *Winslow–Quattlebaum* did not address the issue of reduced UM or UIM coverage, and does not alter the holding of *Lewis*. *Winslow–Quattlebaum* only comments on how an insurance company may violate § 1731(c.1), while *Lewis* found *for* the insurance company on the basis of an unrelated provision, while assuming that the application violated § 1731(c.1). The Duncans continue to argue that their application is void because the two rejection options are placed on the same page in violation of § 1731(c.1). *Lewis* teaches that in a case such as the Duncans', this fact is irrelevant, and *Winslow–Quattlebaum* does not disturb the message of *Lewis*. For these reasons, the Duncans' reliance on *Winslow–Quattlebaum* is misplaced.

The second case the Duncans cite is *National Union Fire Insurance Co. v. Irex Corp.,* 713 A.2d 1145 (Pa.Super.1998),

which is more supportive of their position. The *Irex* court decided two issues. First, it held that the insurance company's waiver forms violated § 1731 and were void and that Irex, which rejected UM coverage on an invalid application, was entitled to UM coverage equal to the policy's bodily injury liability limit. Second, it rejected the insurance company's argument that even if Irex's rejection were invalid under § 1731, the court should construe the rejection as a valid reduction under § 1734 (albeit to zero). The court rejected "this absurd argument and result."

After resolving these issues, the *Irex* court analyzed § 1731's relationship to two other sections of the MVFRL, § 1734 and § 1791[4], and concluded that the sections must be read *in pari materia. Irex,* 713 A.2d at 1152. The case contains language which the Duncans claim "presaged the Supreme Court Opinion in *Winslow–Quattlebaum.*" (Plaintiff's Brief at 3.):

> We conclude that an insured cannot make a valid election to reduce UM/UIM statutory coverage limits under section 1734 unless and until the insured/applicant comports with the requirements set forth in section 1731.

*Irex,* 713 A.2d at 1153. This is exactly the Duncans' argument, and it might be a winning one if not for *Lewis.*[5] *Lewis* recognizes that the *Irex* court made this statement, but dismisses it as dicta because "it was unnecessary to the disposition of the issues before the *Irex* court." *Lewis,* 753 A.2d at 849. Accordingly, the *Lewis* court did not treat the statement as binding precedent. *Id.*

We find that the cases cited by the Duncans to be unpersuasive. *Lewis* is directly on point, and *Winslow–Quattlebaum* is not inconsistent with *Lewis.* Furthermore, any language in *Irex* that states that § 1734 must be read *in pari materia* with

---

4. § 1791 requires an insurer to provide notice to applicants of the types and amounts of coverage required to be offered. *See* 75 Pa. C.S.A. § 1791.

5. While we note that the language in *Irex* certainly bolsters the Duncans' argument, we fail to see how it relates to *Winslow–Quattlebaum,* a case that is seemingly irrelevant to the Duncans' situation.

§ 1731 is dicta. Consistent with *Lewis's* holding that an invalid UM coverage rejection form is irrelevant if a policyholder elects reduced UM coverage, the Duncans are bound by Covenco's election of $35,000 in reduced UM benefits.

 A federal court sitting in diversity must apply state substantive law and federal procedural law. *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir.2000) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). In the absence of a reported decision by the state's highest court addressing the precise issue before it, a federal court applying state substantive law must predict how the state's highest court would rule if presented with the case. *See Nationwide Mutual Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir.2000). A federal court may give due regard, but not conclusive effect, to the decisional law of lower state courts. *Id.* "The opinions of intermediate appellate state courts are 'not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Id.* (quoting *West v. AT & T Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940)). "In predicting how the highest court of the state would resolve the issue, [a federal court] must consider 'relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.'" *Id.* (quoting *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 663 (3d Cir.1980)).

We note that on January 22, 2001, the Supreme Court of Pennsylvania granted a Petition for Allowance of Appeal in the *Lewis* case. We predict that the Supreme Court will affirm the decision of the Superior Court, and that, therefore, if presented with the precise facts of the instant case, would hold as we do.

## IV. CONCLUSION

Based on the foregoing reasons, St. Paul's motion for judgment on the pleadings will be granted. An order consistent with this memorandum will be issued.