752 A.2d 878

**Deborah A. WINSLOW–QUATTLEBAUM, Appellee,**

**v.**

**MARYLAND INSURANCE GROUP and Zurich Personal Insurance, Appellants.**

Supreme Court of Pennsylvania.

Argued Feb. 1, 2000.

Decided June 20, 2000.

Michael T. Farrell, Daniel S. Altschuler, Allan Molotsky, Philadelphia, for Maryland Insurance Group and Zurich Personal Insurance.

Stephen C. Baker, Pittsburgh, Stephen R. Harris, Malvern, Samuel R. Marshall, for Amicus-Insurance Federation of PA.

Lewis R. Olshin, Wayne, for Amicus-PA. Assigned Risk Plan.

Brad E. Harker, for Amicus-PA. Insurance Department.

Martin Stanshine, for Deborah Winslow-Quattlebaum.

David L. Lutz, Harrisburg,for Amicus-PA. Trial Lawyers Assoc.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

NIGRO, Justice.

The sole issue before this Court is whether an insured's rejection of underinsured motorist benefits must appear alone on a page in the insurance application to be valid pursuant to 75 Pa.C.S. § 1731(c.1). For the reasons stated below, we reverse.

On July 25, 1994, Deborah Winslow–Quattlebaum (Winslow–Quattlebaum) purchased an automobile insurance policy through the Assigned Risk Plan of Pennsylvania (Plan) which assigned the policy to Maryland Casualty Company (Maryland).[1] Thereafter, Winslow–Quattlebaum was injured in an automobile accident attributable to the other motorist, whose insurance did not cover all of Winslow–Quattlebaum's damages. Winslow–Quattlebaum then filed an underinsured motorist (UIM) claim against Maryland, which denied coverage, claiming that Winslow–Quattlebaum had declined the optional underinsured motorist protection by signing the rejection form on her original insurance application. Winslow–Quattlebaum brought a declaratory judgment action against Maryland on May 1, 1997, seeking underinsured motorist benefits under the terms of her policy. The trial court found that Winslow–Quattlebaum had rejected the disputed coverage by complet-

1. Zurich Personal Insurance was named as successor in interest to Maryland Insurance Group in Winslow–Quattlebaum's suit. For the sake of clarity, however, we will refer to Winslow–Quattlebaum's insurer as "Maryland."

ing and signing the appropriate form on the application and that, therefore, Maryland had no duty to pay underinsured motorist benefits to her. The Superior Court reversed, finding that the form Winslow–Quattlebaum signed was void because the language offering the option to reject underinsured motorist coverage was not presented alone, on a separate page, pursuant to 75 Pa.C.S. § 1731(c.1). *Winslow–Quattlebaum v. Maryland Cas. Co.*, 723 A.2d 681 (Pa.Super.1998). Accordingly, the Superior Court directed Maryland to provide UIM coverage to Winslow–Quattlebaum.

The page at issue in the automobile insurance application that Winslow–Quattlebaum filled out contained both the Rejection of Underinsured Motorist Protection and Rejection of Stacked Underinsured Coverage Limits and appeared as follows:

PENNSYLVANIA ASSIGNED RISK PLAN[*]

ATTACH TO APPLICATION OR POLICY
CHANGE REQUEST FORM

REJECTION OF UNDERINSURED
MOTORIST PROTECTION[*]

A. By signing the waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for losses and damages. I knowingly and voluntarily reject this coverage.

/s/ [Deborah A. Winslow]
Signature of First Named Insured

Deborah A. Winslow
Print Name

_____
Policy Number (if known)

Date: 7–25–94

## REJECTION OF STACKED UNDERINSURED COVERAGE LIMITS [*]

B. By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

/s/ [Deborah A. Winslow]
Signature of First Named Insured
Deborah A. Winslow
Print Name

_____

Policy Number (if known)

Date: 7–25–94

[* Provisions marked by an asterisk were printed in a highlighted font]

Winslow–Quattlebaum claimed that, because *both* the rejection of underinsured motorist protection and the rejection of stacked underinsured coverage appeared on the same page, her signatures rejecting both options notwithstanding,[2] such rejection is void because the form did not conform to the requirements of section 1731 of the Motor Vehicle Financial Responsibility Law (MVFRL).

Section 1731 of the MVFRL provides the specific language that must appear in the automobile insurance application in order for an insured to validly reject UIM protection. The

**2.** We note that an insured may accept basic UIM coverage and reject UIM stacked coverage but may not accept UIM stacked coverage without first accepting basic UIM coverage because, without the basic UIM coverage, an insured has nothing on which to stack the additional coverage. Here, however, Winslow–Quattlebaum executed the rejection of both UIM and UIM stacking.

form that Winslow–Quattlebaum signed contained this precise language. However, section 1731(c.1) states in pertinent part:

**Form of waiver.**—Insurers shall print the rejection forms required by subsections (b) [3] *and (c)* [4] on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. Any rejection that does not specifically comply with this section is void. . . .

75 Pa.C.S. § 1731(c.1)(bold in original; underline added).

 In finding that Winslow–Quattlebaum's agreement to reject the UIM coverage was void, the Superior Court held that paragraph "A" of the form, *supra,* (regarding UIM coverage) was required to be on a page of its own and that because the form Winslow–Quattlebaum signed included paragraph "B," *supra,* (regarding stacked UIM coverage) on the same page, it did not comply with the requirements of section 1731(c.1). We disagree.

 There is nothing in the language of section 1731(c.1) to suggest that the required rejection statement for UM or UIM coverage must stand alone on a page without any other writing. Rather, the plain language of this section merely requires that the rejection statement for subsection (b)(UM) coverage appear on a page *separate from the rejection statement for subsection (c)* (UIM) coverage. Here, the form for waiving UM coverage was on a separate page from the form waiving UIM coverage, thereby complying with section 1731(c.1). Furthermore, section 1738 ("Stacking of uninsured and underinsured benefits and option to waive") contains no directive at all that the statement rejecting stacking coverage of either UM or UIM benefits must appear on a page alone—or even that it must be separated from any other provision. 75 Pa.C.S. § 1738(d), (e).[5] Thus, we find that there is no

3. Subsection (b) explains the optional uninsured motorist (UM) coverage. 75 Pa.C.S. § 1731(b).

4. Subsection (c) explains the optional underinsured motorist (UIM) coverage. 75 Pa.C.S. § 1731(c).

5. Section 1738 states in pertinent part:

prohibition to having rejection of UIM benefits and UIM stacking benefits appear on the same official form.

■ In further support of this interpretation, we note that the rules of statutory construction require that "whenever possible each word in a statutory provision is to be given meaning and not to be treated as surplusage." 1 Pa.C.S. § 1921(a)("[e]very statute shall be construed, if possible, to give effect to all of its provisions"); *see also Commonwealth v. Lassiter*, 554 Pa. 586, 722 A.2d 657, 661 (1998). Here, section 1731(c.1) first requires that UM and UIM waiver statements appear on separate sheets but further requires that such waiver appear "in prominent type and location." 31 Pa.C.S. § 1731(c.1). Were the UIM waiver the only information on the page, "prominent type and location" would be meaningless, and of course unnecessary, as there would be no other information on the page diminishing its prominence. Therefore, in order to give effect to the entire instruction regarding the basic UIM waiver, other UIM information on the same page cannot operate to void the form.

■ It is well settled that when the courts of this Commonwealth are faced with interpreting statutory language, they afford great deference to the interpretation rendered by the administrative agency overseeing the implementation of such legislation. American *American Airlines, Inc. v. Commonwealth Bd. of Fin. and Revenue*, 542 Pa. 1, 9, 665 A.2d 417, 420–21 (1995). *See also Rohrbaugh v. Pennsylvania Pub. Util. Comm'n*, 556 Pa. 199, 727 A.2d 1080 (1999)(rule adopted pursuant to agency's legislative rulemaking power is binding on court as a statute and court is not at liberty to substitute

(d) Forms.—

\* \* \* \*

(2) The named insured shall be informed that he may exercise the waiver of the stacked limits of underinsured motorist coverage by signing the following written rejection form:

\* \* \* \*

(e) **Signature and date.**—The forms described in subsection (d) must be signed by the first named insured and dated to be valid. Any rejection form that does not comply with this section is void.

75 Pa.C.S. § 1738(d)(2), (e)(bolding in original).

its own discretion for agency's unless regulation appears entirely at odds with fundamental principles as to be expression of whim rather than exercise of judgment). Thus, our courts will not disturb administrative discretion in interpreting legislation within an agency's own sphere of expertise absent fraud, bad faith, abuse of discretion or clearly arbitrary action. *State College Manor Ltd. v. Commonwealth Dep't of Pub. Welfare,* 92 Pa.Cmwlth. 89, 498 A.2d 996, 998 (1985). The Insurance Department is specifically delegated administration and enforcement of insurance matters, including the MVFRL. 75 Pa.C.S. § 1704(b). Pursuant to that authority, the Insurance Department has previously sanctioned an interpretation of section 1731(c.1) that the Superior Court was, therefore, obliged to afford great deference.

Here, the forms submitted as part of Winslow–Quattlebaum's application for insurance under the Plan were exact replicas of forms mandated by the Insurance Department for use by the Plan. Specifically, at 31 Pa.Code § 68.103, the Insurance Department interprets section 1731 as requiring that UM coverage shall be sold separately from UIM coverage. 31 Pa.Code § 68.103(b). It is logical, therefore, that the insured must be given an opportunity to waive UM coverage *separately from waiver of UIM* coverage. Moreover, § 68.103 mandates the use of "statutory language" and directs the reader to the required form in "Appendix A." 31 Pa.Code § 68.103(a). Appendix A contains, verbatim, the very form used by the Plan for Winslow–Quattlebaum. In Appendix A, on a single sheet, appears the template for "Rejection of Underinsured Motorist Protection" with the language of Winslow–Quattlebaum's paragraph "A," *supra.* Immediately following appears "Rejection of Stacked Underinsured Coverage Limits" on the same sheet with the language of Winslow–Quattlebaum's paragraph "B," *supra.* Thus, the waiver in question is an exact replica of this mandated form.[6] Moreover, it stands to reason that where there is a paragraph "A" followed by a paragraph "B," logic would dictate that B follows

6. The Insurance Department has designated the form for waiving of UIM coverage "PA–3000."

A in the same document and that "B" is not presented independent of "A." Furthermore, on a *separate* sheet in Appendix A, appears the form for "Rejection of Uninsured Motorist Protection" with its own paragraph "A" and, immediately following, on the same page, "Rejection of Stacked Uninsured Coverage Limits" with the pertinent paragraph B.[7] As the Insurance Department mandates the use of these forms precisely as they appear in Appendix A, the Department has demonstrably spoken as to the interpretation of section 1731(c.1) regarding what is to be on the same sheet and what must appear on a separate sheet. 31 Pa.Code Ch. 68, Appendix A. Since this mandate constitutes neither fraud, bad faith, abuse of power nor clearly arbitrary action, the Superior Court's contrary interpretation of section 1731(c.1) is in error.

In order to be valid, UM or UIM rejection forms must comply with the requirements of section 1731(c.1) as follows: the UIM rejection must appear on a sheet separate from the UM rejection; the first named insured must sign the rejection; and the rejection must be dated. Instantly, the UIM form was separate from the UM form and Winslow–Quattlebaum, the first named insured, signed and dated the form.[8] There is, therefore, no basis on which to declare such waiver void as it complies with all the requirements of section 1731(c.1). Accordingly, we hold that Winslow–Quattlebaum validly waived UIM coverage and that Maryland has no duty to provide underinsured motorist coverage to her. 75 Pa.C.S. § 1731(c.1). The decision of the Superior Court is reversed.

---

**7.** The Insurance Department has designated the form for waiving of UM coverage "PA–2000."

**8.** We note that Winslow–Quattlebaum specifically signed in the two designated blanks on the form thereby rejecting *both* UIM coverage and UIM stacking coverage. Thus, there can be no mistake that she signed off on both. We further note that, pursuant to her waiver, Winslow–Quattlebaum was billed for and paid the lower premium that rejection of UIM coverage afforded her.