## Scott v. Continental Insurance Co.

C.P. of Lycoming County, no. 03-00052.

*David C. Shipman,* for plaintiff.
*Douglas J. Kent,* for defendant.

BROWN, *P.J.,* January 15, 2004—This matter came before the court on the defendant's preliminary objections to the plaintiffs' complaint. When ruling on preliminary objections, the court must accept as true all well-pleaded facts in the plaintiffs' complaint and all reasonable inferences deducible therefrom. *Lowther v. Roxborough Memorial Hospital,* 738 A.2d 480, 489 (Pa. Super. 1999). Preliminary objections in the nature of a demurrer may be sustained only if they are clear and free from doubt. *Milliner v. Enck,* 709 A.2d 417 (Pa. Super. 1998). With this standard in mind, the relevant facts follow.

On or about November 1, 1999, the plaintiffs applied for auto insurance from the defendant through an insurance agency in Williamsport, Pennsylvania. Complaint at ¶4. At that time, the plaintiffs signed a form relating to underinsured motorist coverage, which stated:

"By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage." Complaint at ¶5; exhibit 1.

The defendant issued an insurance policy to the plaintiffs effective November 11, 1999, which had bodily injury coverage limits of $100,000 per person and no UIM coverage. Complaint at ¶6. The policy was renewed on November 11, 2000, with the same coverages, for a

one-year period, and covered four vehicles. Complaint at ¶7; exhibit 2. On September 22, 2001, plaintiff Richard Scott was hit broadside by another vehicle that had gone through a stop sign, causing him to suffer bodily injuries. Complaint at ¶8. By letter dated November 26, 2002, the plaintiffs made a claim for UIM benefits under their policy, claiming the rejection form signed by them was invalid, because it did not comply with 75 Pa.C.S. §1731. Complaint at ¶¶9, 12-15. In a letter dated December 2, 2002, the defendant denied the plaintiffs' claim for UIM coverage. Complaint at ¶10.

On January 9, 2003, the plaintiffs filed a complaint containing two counts against the defendant. The first count is an action for declaratory judgment. The relief sought in this count was an order declaring the purported UIM waiver void and invalid and stating that the plaintiffs are entitled to $100,000 in UIM coverage, stacked by four vehicles, for a total of $400,000 in UIM coverage in connection with the accident on September 22, 2001. The second count is a claim for bad faith, seeking punitive damages, costs and attorney fees because the defendant did not have a reasonable basis for denying the plaintiffs' claim for UIM benefits. The defendant filed preliminary objections to the plaintiffs' complaint on March 25, 2003. In its preliminary objections, the defendant argues the rejection form at issue substantially complies with section 1731, and is valid and enforceable. In the alternative, even if the form violates section 1731, the defendant contends plaintiffs' claims must still be dismissed because "no remedy is afforded them under the MVFRL." The court heard argument on the defendant's preliminary objections on August 20, 2003.

## DISCUSSION

Section 1731 states in relevant part:

*"(c) Underinsured motorist coverage.—* . . . . The named insured shall be informed that he may reject underinsured motorist coverage by signing the following written rejection form:

"Rejection Of Underinsured Motorist Protection

"By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. *Underinsured coverage protects me and relatives living in my* household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

*"(c.1) Form of waiver.—*Insurers shall print the rejection forms *required* by subsections (b) and (c) on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. *Any rejection form that does not specifically comply with this section is void.* If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits. On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists. Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person

based upon inadequate information." 75 Pa.C.S. §1731. (emphasis added)

The document signed by the plaintiffs lacks the text of subsection (c) italicized above. The defendant asserts that the document substantially complies with subsection (c) and therefore constitutes a valid waiver despite the missing language. This court cannot agree. The language of the rejection form set forth in subsection (c) is not optional; it is *required.* 75 Pa.C.S. §1731; see also, *Winslow-Quattlebaum v. Maryland Insurance Group,* 561 Pa. 629, 633, 752 A.2d 878, 880 (2000) ("Section 1731 of the MVFRL provides the specific language that must, appear in the automobile insurance application in order for an insured to validly reject UIM protection."); *Allwein v. Donegal Mutual Insurance Co.,* 448 Pa. Super. 364, 384, 671 A.2d 744, 754 (1996) ("Insurers who fail to comply with the precise letter of the statute have consistently been required to provide full underinsured motorist coverage.")

The defendant argues that the MVFRL was created to curb spiraling insurance costs; therefore, to further that legislative intent, substantial compliance should be sufficient. The statute, however, indicates insurers must specifically comply with its provisions. Subsection (c.l) states: "Any rejection form that does not *specifically* comply with this section is void." This court can neither re-write the statute to utilize the word substantially in lieu of the word specifically nor interpret the word specifically to require something other than the language contained in the body of rejection form set forth in subsection (c). 1 Pa.C.S. §1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing

its spirit.") The appellate courts of this Commonwealth also have enforced the specific requirements of section 1731. See *Lucas v. Progressive Casualty Insurance Co.,* 451 Pa. Super. 492, 680 A.2d 873 (1996) (insurer required to provide UM and UIM coverage equal to the insured's bodily injury liability limits where rejection forms for UM and UIM were not printed on separate sheets of paper).[1]

The defendant also asserts the form signed by the plaintiffs was approved by the Insurance Department and therefore, the court should find that the form is valid. The defendant relies on *Winslow-Quattlebaum v. Maryland Insurance Group,* 561 Pa. 629, 635-37, 752 A.2d 878, 880-82 (2000). Initially, the court notes that this case is at the preliminary objections stage and there is no information in the plaintiffs' complaint to indicate that the form in this case was approved by the Insurance

---

1. The court has reviewed all the cases submitted by the parties. The defendant argued the trend of the more recent Pennsylvania Supreme Court cases was to relax the technical requirements or excuse strict compliance and negate the Superior Court cases cited by the plaintiffs. The court cannot agree. Instead, the court believes the cases are consistent and reconcilable as follows: the technical requirements contained in section 1731 for the outright rejection of UM and UIM coverage (*i.e.,* the body of the rejection form must utilize the statutory language, the UIM rejection form must appear on a separate sheet from the UM rejection, the first named insured must sign the rejection and the rejection must be dated) are enforced; however, the courts do not impose the technical requirements for an outright rejection of UM or UIM coverage to other situations such as stacking of benefits or a request for lower limits. In fact, the court in *Lewis v. Erie Insurance Exchange,* 568 Pa. 105, 793 A.2d 143 (2002), specifically indicated that its decision was not in conflict with several of the Superior Court decisions cited by the plaintiffs such as *Lucas, supra* and *Motorists Insurance Companies v. Emig,* 444 Pa. Super. 524, 664 A.2d 559 (1995).

Department.[2] Further, *Winslow-Quattlebaum* is distinguishable in several respects. First, *Winslow-Quattlebaum* involved the issue of whether the separate sheet requirement of section 1731 applied to the stacking of benefits. It did not involve an issue regarding the language used in the rejection form. In fact, there is language in *Winslow-Quattlebaum,* albeit dicta perhaps, that would support the plaintiffs' claims. The Pennsylvania Supreme Court stated: "Section 1731 of the MVFRL provides the specific language that must appear in the automobile insurance application in order for an insured to validly reject UIM protection." 561 Pa. at 633, 752 A.2d at 880. Second, the forms utilized by the insurance company in *Winslow-Quattlebaum* were not merely approved by the Insurance Department, but were mandated by regulation. *Id.* at 635-37, 752 A.2d at 881-82. The regulations at issue in *Winslow-Quattlebaum* (31 Pa. Code §68.103 and appendix A) required the statutory rejection form for UIM coverage and the rejection of stacked UIM coverage to be on the same sheet of paper. These regulations, however, were deleted effective July 31, 1999, because these provisions were redundant and unnecessary as they were sufficiently addressed within the Act. 29 Pa. Bulletin 4076. Finally, the forms signed by the insured in *Winslow-Quattlebaum* contained the precise statutory language and were exact replicas of the forms required by the Insurance Department. *Id.* at 633-34, 636, 752 A.2d at 880, 882. Here, the form signed

---

2. At this stage of the proceedings, the defense cannot offer evidence. Furthermore, this allegation likely would be the subject of discovery. Even assuming arguendo that the Insurance Department approved the form, it is possible the missing language got dropped during the printing process after the forms were allegedly approved.

by the plaintiffs is not an exact replica of the form contained in section 1731.

The defendant next contends that even if the document signed by the plaintiffs does not constitute a valid waiver, the plaintiffs' complaint still must be dismissed because there is no remedy under the statute. Again, the court cannot agree. Subsection (c.1) states: "If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits." Therefore, if the form signed by the plaintiffs is invalid, the statute provides the plaintiffs with underinsured coverage equal to the bodily injury limits.

For the forgoing reasons, the court will deny the defendant's preliminary objections.

## ORDER

And now, January 15, 2004, the court denies the defendant's preliminary objections to the plaintiffs' complaint.