938 A.2d 1000

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF EDUCATION**

v.

**The EMPOWERMENT BOARD OF CONTROL OF the CHESTER–UPLAND SCHOOL DISTRICT, Members Mark Wooley, Esquire, Kathy Schultz and Juan Baughn, Substituted Respondents**

**Chester–Upland School District, Special Board of Control, Michael F.X. Gillin, B. Granville Lash and Adriene M. Irving**

**Appeal of Chester–Upland School District Special Board of Control, Michael F.X. Gillin, and Wallace H. Nunn.**

Supreme Court of Pennsylvania.

Submitted on Briefs Sept. 18, 2007.

Decided Dec. 27, 2007.

428

430

Linda J. Shorey, John P. Krill, Jr., Anthony Richard Holtzman, Marsha A. Sajer, Kirkpatrick & Lockhart, Preston, Gates, Ellis, LLP, Leo A. Hackett, Law Offices of Leo A. Hackett & Francis T. Sbandi, Harrisburg, for Chester-Upland School District Special Board of Control and Wallace H. Nunn.

Wendy Beetlestone, Matthew Aaron Hamermesh, Joseph A. Dworetzky, Daniel Segal, Gregory Blechman David, Hangley, Aronchick, Segal & Pudlin, P.C., Joseph Miller, Philadelphia, PA, for Dept. of Education.

Adrian Renz King, Jr., Ballard, Spahr, Andrews & Ingersoll, L.L.P., Philadelphia, PA, for Juan Baughn, Marc Woolley, Kathy Schultz, and Empowerment Board of Control of the Chester-Upland School Dist.

BEFORE: CAPPY, C.J., CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITGERALD, JJ.

## OPINION

Chief Justice CAPPY.

This case is the culmination of many months of acrimonious proceedings between the Chester–Upland School District Spe-

cial Board of Control ("SBOC") and the appointees of the SBOC (collectively "Appellants") and the Department of Education ("Department") involving the financial distress status of the Chester–Upland School District ("District"). The appeal before us arises out of two orders filed by the Commonwealth Court resolving the conflict. On April 16, 2007, the Commonwealth Court entered an order granting, *inter alia,* the Department's request to substitute the Empowerment Board of Control of the Chester–Upland School District for Appellants as the Respondent in this matter. Subsequently, on April 17, 2007, the Commonwealth Court entered an order approving the Settlement Agreement between the Department and the Empowerment Board and marked this matter "settled, discontinued, and ended." For the reasons stated herein, we affirm the Commonwealth Court's order dated April 16, 2007 and quash Appellants' appeal from the order dated April 17, 2007.[1]

The District is a public school district established until Article II of the Public School Code ("Code"), 24 P.S. §§ 1–101–27–2702. Until 1994, the District was controlled by an elected school board. In 1994, the District was declared financially distressed under 24 P.S. §§ 6–691–6–697 of the Code and an SBOC was appointed to manage and control the District. In 2000, the Education Empowerment Act ("EEA"), 24 P.S. §§ 17–1701–B–17–1716–B, was enacted into the Code. At that time, the EEA required that districts certified as

---

1. The only Appellants before us are the SBOC and Michael F.X. Gillin and Wallace H. Nunn. The parties dispute whether the District was ever a party to this litigation. Appellants argue that the District was a party when the Department filed the original Petition for Review in this matter, whereas the Department points out that the District was never a named party in this matter. Instead, the Department contends that the only named parties were the SBOC and its members. The Department's argument appears sound, since the Petition for Review filed by the Department reflects that the Department sought relief solely against the Board and its members. *See, e.g.,* Petition for Review, at 25 (seeking a judgment of mandamus requiring appointees in their capacities as members of the SBOC to comply with various sections of the Code) and 26 (requesting that the Commonwealth Court enter a judgment enjoining the SBOC from further violating the Code). Likewise, the District was not named as a Respondent in the caption of that filing. Thus, we agree with the Department that the only Appellants before us are the SBOC and its appointees.

financially distressed and having low academic scores for three years should be deemed "Education Empowerment Districts" and would be controlled by an Education Empowerment Board of Control. 24 P.S. § 17–1705–B(h)(4), *amended by* Act 187, *see* Pa. Laws 1472, No. 187 § 5 (December 9, 2002). Thus, an Empowerment Board replaced the initial SBOC.

In 2002, the Code was amended by the enactment of Act 187 and now provides that a district that is financially distressed and is also an Education Empowerment District shall be controlled by a special board of control under Section 692 of the Code, 24 P.S. § 6–692. *See* 24 P.S. § 17–1705–B(h)(1),(2) (as amended by Act 187, § 5). The current SBOC for the District was then established under Section 692. Appellant Gillin was an original member, Appellant Nunn was appointed as a replacement for another member, Adrienne M. Irving, who resigned during the pendency of the litigation, the third appointee also resigned, and no replacement has been appointed.

An SBOC is created under Section 692 of the Code when the Secretary of Education has issued a certificate declaring a school district to be financially distressed under certain enumerated conditions as prescribed by 24 P.S. § 6–691 (there are seven enumerated conditions) and following a proper investigation by the Secretary. Thus, Section 691 prescribes the conditions under which a school district is declared financially distressed and Section 692 governs what occurs once such a declaration has been made.

In 2004–05, it came to the Secretary's attention that there were concerns regarding the SBOC's management of the District's funds. Thus, on September 30, 2005, the Department filed a Petition for Review in the Commonwealth Court's original jurisdiction seeking mandamus, injunctive and declaratory relief, and requesting that the Commonwealth Court appoint a receiver to manage the District in place of the SBOC. Initially, the Commonwealth Court granted a peremptory judgment in the nature of mandamus, requiring Appellants to comply with the Code, and denying preliminary injunctive relief and the Department's alternative request to

appoint a receiver. The order was appealed to this Court and following review, we reversed the Commonwealth Court's order granting a peremptory judgment in the nature of mandamus and remanded the case for further hearings on the merits of the Petition for Review. *Commonwealth of Pennsylvania, Dep't of Education v. Chester–Upland School District Special Board of Control*, 590 Pa. 10, 911 A.2d 918 (2006).

Following many days of hearings before Judge James Gardner Colins, the Commonwealth Court entered a single judge preliminary injunction order appointing the Secretary of Education as the receiver *pendente lite* for the District. Appellants challenged the Commonwealth Court's jurisdiction to appoint a receiver on the basis that the sole remedy for the Department to pursue under such circumstances was under Section 692 of the Code. Appellants contended that the Department could not seek and the Commonwealth Court could not grant an equitable remedy outside the Code. Furthermore, according to Appellants, Judge Colins violated the separation of powers doctrine, Article III, Section 14 of the Pennsylvania Constitution, when he concluded that jurisdiction was proper because "the legislative scheme that has created the SBOC has been a marked failure," and thus, it was up to the courts to remedy the failure. *See* Memorandum Opinion and Order, dated October 16, 2006, at 46–47. That appeal is pending before this court at 111 and 115 MAP 2006 and was stayed by order dated July 11, 2007.

In the interim, on March 8, 2007, the Secretary issued a Declaration Concerning Reestablishment of Sound Financial Structure in Chester–Upland School District (hereafter "Declaration") stating, "WHEREAS, with the termination of the declaration of fiscal distress under which the District has operated for more than 12 years, the District would continue to function under other applicable laws, including the EEA [Educational Empowerment Act], 24 P.S. §§ 17–1701–B–17–1716–B." Declaration, dated March 8, 2007, at 5. Furthermore, the Declaration provided, "WHEREAS, as an education empowerment district that is not under a declaration of distress under section 691(a) of the Public School Code, 24 P.S.

§ 6–691(a), the District would be governed by a board of control established by section 1705–B of the EEA, 24 P.S. § 17–1705–B, based, *inter alia,* on the District's history of low test performance and its continuing failure to improve educational performance." *Id.* Finally, the document declared that "the [SBOC] of the [District], Delaware County, has operated the District for a period of time sufficient to reestablish a sound financial structure, and, notwithstanding the District's many serious and continuing educational performance and other problems, a sound financial structure has been reestablished in the District at this time." *Id.* at 6. Following the Declaration, the Secretary appointed an Empowerment Board under 24 P.S. § 17–1705–B to operate and manage the District in place of the SBOC.

Appellants challenged the Declaration by filing an Application in the Nature of a Motion for Entry of Final Judgment in Favor of Respondents in the Commonwealth Court on March 12, 2007. The Application requested that final judgment be entered in favor of Appellants on the basis that the Department had acted in bad faith and with unclean hands, and, thus, was not entitled to the equitable relief that it was seeking. The Application also stated that "Nothing herein should be construed as a concession by [Appellants] that [the Secretary] has the authority to make a determination, through the Declaration, that a sound financial structure has been reestablished in the District. . . ." Application for Final Judgment, filed 3/12/2007, at 8.

In response, the Department requested that Appellants' filing be struck and that the Empowerment Board be substituted for the SBOC as Respondent under Pa.R.A.P. 502(b). In its Brief in Support of the filings, the Department challenged· Appellants' standing to continue in this matter. The Department also pointed out that Appellants were not challenging the validity or effectiveness of the Declaration, but contended that even if they were, the Secretary was vested with discretion to make such a declaration under Section 692 of the Code and that such declaration had the effect of dissolving the SBOC. The Department also pointed out that an

Empowerment Board had been appointed to represent the District and that the SBOC had no official function. Shortly thereafter, on April 2, 2007, the Department asked the Commonwealth Court to approve a settlement agreement reached between the Department and the Empowerment Board. On April 12, 2007, Judge Colins heard oral argument in connection with these filings.

On April 16, 2007, Judge Colins entered a single judge order denying Appellants' Application for Final Judgment and dismissing the Department's Motion to Strike Appellants' Application as Moot. The court granted the Department's substitution request, and substituted the Empowerment Board as Respondent in place of the SBOC. The April 16th order also provided that the SBOC, "having been dissolved, pursuant to the Secretary of Education's establishment of the Empowerment Board of Control" as of the date of the Declaration and that the SBOC members "shall cease and desist from any and all attempts to govern or administer the Chester Upland School District." *See* Order of the Commonwealth Court dated 4/16/2007. On April 17, 2007, the Commonwealth Court entered an order approving the Settlement Agreement between the Department and the substituted Respondent, the Empowerment Board, *in toto.* The April 17th order also directed the "Chief Clerk" to mark the above-captioned matter "settled, discontinued, and ended." *See* Order of the Commonwealth Court, dated April 17, 2007. Appellants appealed these orders on April 18, 2007.

Thereafter, on July 17, 2007, Judge Colins issued a memorandum opinion in support of his April 16th & 17th orders. In that opinion, Judge Colins explained that under Section 692, when the Secretary of Education has determined that "sound financial structure" has returned to the school district, the SBOC is dissolved as its purpose is no longer necessary. *See* Commonwealth Court slip opinion, July 17, 2007, at 6. "Moreover, nothing in the Code vests a [SBOC] with the authority to challenge the Secretary's determination that a school district has returned to a 'sound financial structure.'" *Id.* at 6–7. Therefore, Judge Colins concluded that when the Secretary

issued its declaration, the SBOC was dissolved and the SBOC and its members no longer held an official position in the District and lacked any authority or standing to continue acting on behalf of the District. *Id.* at 7. Likewise, the substitution order was proper, since the dissolution of the SBOC necessitated the substitution of another entity to be in control of the District. In this case, that entity was the Empowerment Board because the District's "return to a more financial footing was not accompanied by higher educational achievement. . . ." *Id.*

Since the appeal of the April 16 and 17, 2007 orders, Appellants filed an Expedited Application for Supersedeas with this Court at 68 MM 2007. In that Application, Appellants argued that they were entitled to an automatic supersedeas as a political subdivision under Pa.R.A.P. 1736 on two bases. Appellants contended that the District was a named party to this litigation, *see infra* n. 1, and the SBOC could not be dissolved until all pending litigation was resolved, since it was challenging the validity of the Declaration. This Court denied Appellants' Application by order dated June 1, 2007 and provided that Appellants could seek a supersedeas with the Commonwealth Court pursuant to Pa.R.A.P. 1736(a) under *Pennsylvania Public Utility Comm'n v. Process Gas Consumers Group*, 502 Pa. 545, 467 A.2d 805 (1983). That order also stated:

On March 8, 2007, the Secretary of the Department of Education issued a "Declaration Concerning Reestablishment of Sound Financial Structure in Chester–Upland School District," which had the effect of dissolving the SBOC and, thereby, ending its control of the Chester–Upland School District. *See* 24 P.S. § 6–692 (providing that the special board of control operates "during the period necessary to reestablish a sound financial structure"). The Commonwealth Court's orders of April 16 and April 17, 2007, implicitly recognized the plain terms of the Declaration by approving the settlement agreement entered into by the Department and the Empowerment Board and by granting the Department's request to substitute the Em-

powerment Board for [Appellants] in all pending litigation. When [Appellants] appealed the court's substitution and settlement agreement orders, no automatic supersedeas came into effect because, in the absence of a demonstrated defect in the Department's declaration, [Appellants] were no longer officers of a "political subdivision" under Rule of Appellate Procedure 1736(a) and were thereby not entitled to an automatic supersedeas under Rule 1736(b).

Order of the Pennsylvania Supreme Court, June 1, 2007, 68 MM 2007.

Appellants have raised a myriad of issues in this case, including challenges to the jurisdiction of the Commonwealth Court, whether the Commonwealth Court exceeded its authority in this matter, and whether the Department acted in bad faith or with unclean hands.[2] We will not follow the issues in

2. Specifically, Appellants raise the following issues to this court:

 a. Whether this [C]ourt has jurisdiction to decide this appeal despite the Secretary of Education's purported dissolution of Appellant SBOC.

 b. Whether the Substitution and Settlement Order, as a matter of law, should be reversed for one or more of the following reasons:

(1) Under Pa. Const. Art. III, § 14, the Department of Education's petition for review, seeking appointment of a receiver to operate and manage the District in place of the SBOC, was nonjusticiable and therefore the court lacked jurisdiction to entertain the matter, much less to settle it by altering the statutory framework for local governance of a school district in violation of the separation-of-powers principles;

(2) The Department's request for the appointment of a receiver, and the settlement approved by the court, constitute equity violating the law;

(3) The Department failed to pursue the exclusive, mandatory, and adequate administrative remedy for its grievance;

(4) The validity of the Declaration must be determined in a quo warranto proceeding;

(5) The Secretary lacked the power to issue his Declaration purporting to dissolve the SBOC;

(6) The Declaration is invalid because, as a matter of law, it is a sham;

(7) The substitution of parties by way of which the Empowerment Board became the Respondent in this matter was not "necessary" within the meaning of Pa.R.A.P. 502(b);

(8) The Department acted with unclean hands with respect to this matter;

the order presented by Appellants, nor address all of their questions, as the primary issue in this case relates to the Department's issuance of the Declaration and the Commonwealth Court's denial of Appellants' Application for Final Judgment. In the event that we affirm the Commonwealth Court's order dated April 16, 2007, then the remaining issues raised by Appellant are not before us, since the Empowerment Board was properly substituted as the party in interest and Appellants are no longer a party to any further litigation.

Turning first to a brief review of the relevant statutory provisions, under the Code, the Department has the power and duty "to administer all of the laws of this Commonwealth with regard to the establishment, maintenance, and conduct of the public schools...." 71 P.S. § 352(a). The Code provides that the Secretary of Education may deem a district financially distressed under certain enumerated conditions, after a proper investigation of the district's financial conditions. *See* 24 P.S. § 6–691. Following a declaration by the Secretary that the district is distressed, the Secretary shall designate a representative and the Secretary or his designated representative "shall petition the court of common pleas of the county ... to appoint two citizens" to the SBOC. 24 P.S. § 6–692. Those appointees are to serve five-year terms and shall not be removed "from office during a term, except that the Secretary of Education may upon clear and convincing evidence of malfeasance or misfeasance in office remove a member prior to the expiration of the term." *Id.* The penultimate sentence of Section 692 provides that "[t]he [SBOC] shall assume control of the affairs of the district and operate it in the place of the school directors during the period necessary to reestablish a sound financial structure in the district." *Id.*

(9) The settlement agreement between the Department and the Empowerment Board transfers governance authority for a school district to a state official as an equitable receiver; or

(10) The Commonwealth Court should have taken evidence and made findings on whether the Declaration is a sham and the settlement agreement is collusive and not in the district's or the public's interest.

The Code separately speaks to the creation of an Empowerment Board when a district is declared to be academically distressed, i.e., "a school district on the education empowerment list that does not meet the goals for improving educational performance set forth in the school district improvement plan and maintains a history of low test performance at the end of the third school year following the date of its placement on the list shall be certified by the department as an education empowerment district." 24 P.S. § 17–1705–B. Furthermore, the EEA makes clear that a school district under a declaration of financial distress and certified as an education empowerment district "shall be operated by a special board of control under Section 692." 24 P.S. § 17–1705–B(h)(4).

 The threshold issue in the case is the question of Appellants' standing. The Department argues that Appellants do not have standing because the SBOC was dissolved by the Declaration. After the SBOC was dissolved, it was no longer a legal entity that was entitled to file and prosecute an appeal. According to the Department, an appeal by a party that no longer exists should be quashed. *See Blackwell v. Pennsylvania State Ethics Commission,* 523 Pa. 347, 567 A.2d 630 (1989); *see also* G. Ronald Darlington, et al., PENNSYLVANIA APPELLATE PRACTICE 2d § 501:5 (2004) (stating "an appeal by a party which is no longer in existence will be quashed, as will an appeal by a party which no longer has an interest in the subject matter of the litigation.").

 This court has had many recent opportunities to consider standing. Simply stated,

> [T]he core concept in any standing analysis is that a person who is not adversely affected in any way by the matter he seeks to challenge is not "aggrieved" thereby and has no standing to obtain a judicial resolution of his challenge. It is well-established that an individual can demonstrate that he is aggrieved if he can establish that he has a substantial, direct, and immediate interest in the outcome of the litigation in order to be deemed to have standing. An

interest is "substantial" if it is an interest in the resolution of the challenge which "surpasses the common interest of all citizens in procuring obedience to the law." Likewise, a "direct" interest mandates a showing that the matter complained of "caused harm to the party's interest," i.e., a causal connection between the harm and the violation of law. Finally, an interest is "immediate" if the causal connection is not remote or speculative.

*Society Hill Civic Ass'n. v. Penn. Gaming Control Bd.,* 593 Pa. 1, 16, 928 A.2d 175, 184 (2007) (citations omitted).

The Department's argument regarding standing is illogical as applied to Appellants' ability to raise a challenge to the Declaration. Instead, this Court agrees with Appellants that they have standing to litigate the issue of whether the SBOC was dissolved by the Declaration and the related action of the Commonwealth Court on April 16th to substitute the Empowerment Board for Appellants on pending litigation. Under Section 692 of the Code, appointees to the SBOC (Appellants) are appointed for a five-year term. Section 692 also provides that appointees can be removed for misfeasance or malfeasance. In this case, however, the appointees' five-year term was terminated prematurely when the Secretary of Education issued its Declaration without a finding of malfeasance or misfeasance. Accordingly, Appellants interest in challenging the Declaration surpasses that of the common interest of all citizens, the Declaration caused harm to their interest, and the Declaration had an immediate impact on their interests; and Appellants have standing for the limited purpose of challenging the manner in which the dissolution occurred, i.e., the Secretary's action in issuing the Declaration, and the validity of such a Declaration to the extent preserved below.

Similarly, Appellants also argue that the Commonwealth Court was without jurisdiction to declare the Secretary's Declaration valid. Such an argument is obtuse because the Commonwealth Court never made any statement that the Declaration was "valid" or had legal effect nor was it ever asked to do so by the Department. Rather, the only request that the Department ever made which implicitly related to the

Declaration was the request to substitute the Empowerment Board for Appellants. Moreover, Appellants did not challenge the validity or the legal effect of the Declaration under the administrative appeals process as a final order as defined by 2 Pa.C.S. § 101 or the process prescribed by Chapter 7, 2 Pa.C.S. § 701 *et seq.* Instead, they filed the Application for Final Judgment with the Commonwealth Court arguing that the Department acted in bad faith or with unclean hands. Thus, any challenge to the "validity" or legal effect of the Declaration is limited by Appellants' own pleadings.

Related to this point, Appellants devote some of their argument to the fact that the Commonwealth Court did not have jurisdiction over these proceedings, since the Department should have filed an action seeking to have the Declaration declared "valid" through a *quo warranto* proceeding. Appellants' argument, however, misapprehends the current proceedings. Instead, as will be discussed herein, Section 692 authorized the Secretary to make such a declaration and the Declaration did not need any courts stamp of approval in order for the Declaration to have legal effect.

Turning to the heart of this case, Appellants raise two primary challenges to the Secretary's Declaration. First, they contend that the Secretary was not authorized to dissolve the SBOC. Rather, such action could only be accomplished through the Court of Common Pleas. Second, Appellants assert that the Declaration represents arbitrary and capricious decision-making because of the numerous contradictions the Department made.

[6] Appellants' first argument is that the Declaration was invalid as a matter of law because the plain language of Section 692 does not give the Secretary's Declaration any legal effect. Rather, Section 692 allocates the responsibility to declare a district financially sound to the Court of Common Pleas. According to Appellants, such a conclusion is supported by the fact that Section 692 gives the court the authority to appoint two out of three members of the SBOC, i.e., a majority of the members. This reflects the Legisla-

ture's intent that the Court of Common Pleas should also have control over who can declare a District financially sound. Appellants further posit that the only time an SBOC member can be removed by the Secretary under Section 692 is upon a showing of malfeasance or misfeasance.

The Department's position is that Section 692 authorized the Secretary to make the Declaration and that the SBOC was dissolved by virtue of that Declaration.

Arguably, this question was resolved by this court's June 1, 2007 order entered at 68 MM 2007, wherein we stated that the Declaration "had the effect of dissolving the SBOC and, thereby, ending its control of the Chester–Upland School District" and citing to the penultimate sentence in Section 692. *See* Order of the Supreme Court of Pennsylvania, June 1, 2007. Nevertheless, we provide further clarification and elucidation of our conclusion below.

Under Section 691 of the School Code, the Secretary of Education is given responsibility for declaring a school district in financial distress. 24 P.S. § 6–691. Of course, this authority is limited in that such a declaration can only occur when certain enumerated conditions arise, but it is within his or her sole discretion to make such a declaration after undertaking a "proper investigation." *Id.* Section 692 then provides for the appointment of an SBOC after such a declaration has been made. Section 692 states that the SBOC shall assume district control "during the period necessary to reestablish sound financial structure in the district." 24 P.S. § 6–692. Thus, these two provisions make clear that following a declaration of financial distress by the Secretary, an SBOC shall be appointed to run the district until the period necessary to reestablish sound financial structure has elapsed.

■ The question the instant case raises is who or what entity may declare that the financial soundness period has run. In general, the interpretation of a statute is a question of law and our scope of review is plenary. *Gardner v. WCAB (Genesis Health Ventures )*, 585 Pa. 366, 888 A.2d 758, 761 n. 4 (2005). Normally, the plain language of the statute is the best

indicator of the Legislature's intent. 1 Pa.C.S. § 1921. In this case, however, Section 692 and the subsequent provisions of the financial distress portion of the Code do not specifically answer this question, as they are silent as to any process for declaring when "the period necessary to reestablish sound financial structure in the district" has elapsed. *Compare* 24 P.S. § 17–1710–B (making clear that the Department has the responsibility to "remove the school district from the education empowerment list....").

■■ This does not mean, however, that we are left adrift, since it is well settled that "a [statutory] interpretation by the agency charged with the administration of a particular law is normally accorded deference, unless clearly erroneous." *Harkness v. Unemployment Compensation Bd. of Review,* 591 Pa. 543, 920 A.2d 162, 171 (2007); *see also Winslow–Quattlebaum v. Maryland Ins. Group,* 561 Pa. 629, 752 A.2d 878, 881 (2000). Thus, this court will not disturb administrative discretion in interpreting legislation within an agency's own sphere of expertise absent fraud, bad faith, abuse of discretion or clearly arbitrary action. *Winslow–Quattlebaum,* 752 A.2d at 881.

As our first question involves the proper construction of the financial distress provisions of the Code, we will defer to the agency's interpretation unless it is clearly erroneous.

■ The Department of Education has the power and duty "to administer all of the laws of this Commonwealth with regard to the establishment, maintenance, and conduct of the public schools...." 71 P.S. § 352(a). Moreover, by the scheme set forth in Sections 691 and 692, it is clear that the Legislature gave the Secretary nearly sole discretion and control over the financial distress process. Any involvement by the judiciary in the financial distress process is extremely limited—the courts step in only to make appointments upon *petition by* the Deputy Secretary of Education or his or her designated representative. Thus, the court's involvement in the financial distress process comes only ***after*** it has been petitioned to do so by the Secretary's representative. Clearly,

the Secretary retains primary control of the financial distress process. Indeed, Judge Colins recognized as much in an earlier opinion in this litigation when he stated unequivocally that "courts should not be running school districts." *See Memorandum opinion and Order of Commonwealth Court, October 16, 2006, at 46.* Accordingly, in light of the deference to be given to an agency's interpretation of statutes, the fact that the Department of Education is to administer the Code, and the broad discretion granted to the Secretary under the financial distress statutes, this court concludes that the Secretary was authorized to make the Declaration under Section 692 that "the period necessary to reestablish sound financial structure in the district" had elapsed. Furthermore, by virtue of the Declaration, the SBOC was dissolved, as the District was no longer governed under the financial distress part of the Code. Finally, Appellants' suggestion that SBOC members can only be removed by the Secretary for malfeasance or misfeasance is absurd, since such an interpretation would essentially give the SBOC appointees a five-year vested term even if a school district has returned to financial soundness.

■ Alternatively, Appellants assert that even assuming that the Secretary had the authority to dissolve the SBOC by virtue of the Declaration, the Declaration was a sham and made in bad faith. This argument is substantially similar to the "unclean hands" argument that is also raised by Appellants. Appellants' point out that in January of 2007, the Department took the position that the SBOC had mismanaged the district to such a degree that it was financially unstable. Yet, only two months later, in March of 2007, the Secretary declared the District financially sound. Appellants contend that the inconsistent positions taken by the Department indicates a "thinly veiled, but now transparent, scheme by which [the Department has] attempted to wrest control of the District from the SBOC." Appellants' Brief at 41.

Again, appellate courts will not disturb administrative discretion in interpreting legislation within an agency's own sphere of expertise absent fraud, bad faith, abuse of discretion or clearly arbitrary action. *Winslow–Quattlebaum supra.*

The Declaration represented that following the appointment of the Secretary as Receiver *pendente lite* for the District, the District's financial controls and financial structure improved. Declaration at 2. The Declaration then offered specific examples of financial improvements including, *inter alia,* that "adequate internal accounting assistance is now available to the District;" "a structure for review and approval of all contracts and payments in excess of $5,000 has been established;" "a detailed review of all existing contracts is being made, and above-market rate contracts will be cancelled or renegotiated;" "the District has report, in its Annual Financial Report, that the District completed the 2005–2006 fiscal year with an annual operating surplus and a positive general fund balance and, while the Department does not concur with the District's calculations, there was a clear financial improvement from the disastrous 2003–2004 and 2004–2005 fiscal years;" and "the District has met all payrolls during the current fiscal year and the immediately preceding fiscal year." Declaration at 3–4.

In further support of its position, at the April 10th hearing before Judge Colins, the Department argued that before making the Declaration, the Secretary made the same types of considerations that were originally required when certifying the District financially distressed. The Department pointed out that it wasn't "necessary that the adverse financial condition that existed originally be eliminated. The statute doesn't say that. . . . It just says you operate it for the time period necessary to eliminate—to re-establish a sound financial structure." N.T., 4/10/2007, at 34. The Department then reviewed the factors the Secretary reviewed before making the Declaration, including financial factors, i.e., the payrolls being met, a clean audit, and a monthly budget report. The Department's position was not that the District was done getting its financials in order, but that "it is far enough for these factors to contribute to the Secretary's decision." *Id.* at 37. The Department also pointed out that there had been personnel changes to the Board and the District's financial managers that had been in place during the worst period of financial mismanagement. *Id.* at 39–40.

In their Application for Final Judgment, Appellants main point was that the statements made in the Declaration were "disingenuous." Application for Final Judgment, filed 3/12/2007, at 6. Appellants' position was summarized by the following statement: the "misrepresentations, contradictions, and vindictive behavior of the Secretary and the Department should not be rewarded in equity. They further demonstrate that, as Chester–Upland has highlighted in many of its briefs in this matter, the Secretary and the Department are 'guilty of bad conduct relating to the matter at issue' and have not "acted fairly and without fraud or deceit as to the controversy at issue' and, accordingly, under the doctrine of unclean hands, the Department is not eligible to obtain equitable relief." *Id.* at 7 (citations omitted).

At the hearing, Appellants supported their argument by pointing out that as of early March of 2007 the SBOC appointees were largely new to the job and that SBOC appointees should be presumed competent. Thus, the SBOC appointees had not had the opportunity to mismanage the District, and there was no need for the Declaration. *Id.* at 9–10. Appellants then pointed to the discrepancies in the position taken by the Department in January of 2007 and March of 2007. *Id.* at 15–18. Furthermore, Appellants dismissed as incredible the Department's position that in the interim two months after the Department had been named Receiver *pendente lite* it had restored stability to the District's finances. Specifically, Appellants pointed out that the most significant problems with the District's finances—a big debt burden, and huge bond issues had not changed under the Receiver *pendente lite*. *Id.* at 18.

Putting aside the question of the propriety of that action, i.e., whether the Department could have or should have been named Receiver *pendente lite* (the question presented at 111 and 115 MAP 2006), the fact of the matter is that the Department had taken over running the financial aspect of the District following that appointment. Appellants would like us to ignore any possible financial improvements that were made because of the receivership. This we will not do. Further-

more, the Department gave specific examples of financial improvements in the Declaration and before Judge Colins. In order to accept Appellants' position, we would have to conclude that the Department's assertions were made in bad faith and that it misled the public in making the Declaration and was less than candid at the hearing before Judge Colins. Judge Colins heard both parties' arguments, including Appellants' arguments that the Department and Secretary engaged in "duplicity" in making the Declaration. *Id.* at 14. And, following this hearing, Judge Colins issued his order denying Respondent's Application in the Nature of a Motion for Entry of Final Judgment in Favor of Respondents and granting the Department's request to substitute the Empowerment Board for the SBOC as the interested party. Implicit in that ruling was that the Department neither acted in bad faith nor acted with unclean hands in making the Declaration, since such accusations provided the basis for Appellants' Application for Final Judgment. Accordingly, we find Appellants' arguments without foundation and this court will not disturb the Department's discretion in interpreting the Code based on allegations of bad faith. *See Winslow–Quattlebaum supra.*

Appellants separately argue that the Department acted with unclean hands in this matter. Appellants point out that a court may deprive a party of equitable relief when the party applying for such relief is guilty of bad conduct. *Terraciano v. PennDOT*, 562 Pa. 60, 753 A.2d 233 (2000). As evidence of "unclean hands," Appellants reiterate the discussion immediately above related to the contradictions allegedly made by the Department between January and March of 2007.

Ultimately, this issue hearkens back to the appointment of the Department as Receiver *pendente lite* for the District, since Appellants are complaining about the equitable relief that was granted in this matter. That issue, however, is not currently before this court, nor will it ever be before us if we affirm the Commonwealth Court's order of April 16th. Rather, the issue immediately before us involves the appeal from the April 16th order and we will confine our discussion to that order.

■ Appellants also argue that substituting the Empowerment Board for the SBOC was not "necessary" under Pa. R.A.P. 502, and, in fact, created an absurdity. Appellants contend that by appointing the Empowerment Board, it appeared that the Department's litigation was against that entity, when, in fact, the Empowerment Board was not in power long enough to be guilty of any malfeasance or misfeasance.

The Rules of Appellate Procedure provide for the substitution of a party "if substitution of a party in an appellate court is necessary." Pa.R.A.P. 502. Clearly, Appellants' argument has taken this rule to a level of hypertechnicality that is not required. The rule can be simply applied to this case: upon the Secretary's Declaration, the SBOC was dissolved. At that point, the Empowerment Board replaced the SBOC to manage the District and it became the entity with the legal authority to represent the District. It was necessary for the Commonwealth Court to substitute an extant legal entity for a dissolved legal entity as there was ongoing litigation. Hence, the substitution that was ordered on April 16th was clearly necessary as it was the only way to resolve the pending litigation. In the absence of such substitution, the SBOC, which had been dissolved, would still be a named party. Such a result is legally untenable.

■ Appellants also challenge the April 17th settlement order as well as raise multiple other issues related to the underlying jurisdiction of the Commonwealth Court in accepting equitable jurisdiction over this case in the first instance. Many of Appellants' complaints are directed at the fact that the Commonwealth Court lacked jurisdiction over this case from the outset. Once again, any allegedly untoward action taken by the Commonwealth Court related to the receivership action had no effect on the Secretary's Declaration. Rather, the Declaration was independently made under Section 692 and it was within the authority of the Secretary to make such a declaration under Section 692. As this court has previously stated, the Declaration "had the effect of dissolving the SBOC and, thereby, ending its control of the Chester–Upland School

District." *See* Order of the Supreme Court of Pennsylvania, June 1, 2007.

Accordingly, for the reasons stated herein, we affirm the Commonwealth Court's order dated April 16, 2007. Following the affirmance of the April 16th order, Appellants are no longer an extant party and cannot have party status before this or any other court. Consistent with such reasoning, as of April 17th, the Empowerment Board was properly substituted for the SBOC and the SBOC's appeal from the April 17th order must be quashed. *See, e.g., Blackwell v. Commonwealth, State Ethics Comm'n*, 523 Pa. 347, 567 A.2d 630 (1989) (holding quashal is appropriate when entity was "out of existence"); G. Ronald Darlington, et al., PENNSYLVANIA APPELLATE PRACTICE 2d § 501:5 (2004) (stating "[a]n appeal by a party which is no longer in existence will be quashed, as will an appeal by a party which no longer has an interest in the subject matter of the litigation.").[3]

Justice CASTILLE and EAKIN, Justice BALDWIN and Justice FITZGERALD join the opinion.

Justice BAER files a concurring opinion in which Justice SAYLOR joins.

Justice BAER, concurring.

The Majority couches its ruling vindicating the Secretary of Education's dissolution of the School District Special Board of Control ("SBOC") in this case in "[1] the deference to be given to an agency's interpretation of statutes . . . [2] the fact that the Department of Education is to administer the [Public

---

**3.** Our June 1, 2007 order denying Appellants' Expedited Application for Supersedeas stated that we were denying the Application "without prejudice to their ability to pursue a stay or supersedeas in the Commonwealth Court" under *Pennsylvania Public Utility Comm'n v. Process Gas Consumers Group*, 502 Pa. 545, 467 A.2d 805 (1983). Understandably, Appellants filed such Application with the Commonwealth Court and the court denied the Application on September 6, 2007.

Appellants filed an Application for Supersedeas with this court attempting to fit this case within *Process Gas* on September 24, 2007. For the reasons stated above, we will also quash Appellants' Application for Supersedeas.

School Code [1]], and [3] the broad discretion granted to the secretary under the financial distress statutes." Maj. Op. at at 444, 938 A.2d at 1010–11. While I agree that the Secretary enjoys a great deal of latitude in administering the Code, I do not believe that his interpretations of his mandate in this case, or any administrative interpretations forwarded for the first time in connection with adversarial litigation, are entitled to any more weight than any other litigant's argument in support of its position.

The United States Supreme Court, in its extensive precedent concerning judicial deference to administrative interpretations of ambiguous enabling statutes, *see, e.g., Chevron, U.S.A., Inc., v. Natural Res. Def. Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), has recognized the dangers of deferring to interpretations developed in anticipation of litigation. In *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), the Court declined to defer to an agency interpretation "wholly unsupported by regulations, rulings, or administrative practice," and forwarded for the first time in connection with litigation, on the basis that "Congress has delegated to the administrative official and not to appellate counsel the responsibility for elaborating and enforcing statutory commands." *Id.* at 212, 109 S.Ct. 468 (quoting *Investment Co. Inst. v. Camp,* 401 U.S. 617, 628, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971)).

These same concerns find their expression in this case. The record reveals nothing so much as the bitter acrimony that has characterized the proceedings below, and discloses no prior interpretation supporting the position now forwarded by the Secretary. The parties' agendas do not concern me, nor should they, but privileging the Department's interpretation of the Code under such circumstances is to put a thumb on the scales of justice based not on the soundness of the parties' argument but rather their identities. *See id.* at 212 ("Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate.").

1. Public School Code of 1949, Act of Mar. 10, 1949, Pub.L. 30, art. I, § 101, *as amended,* 24 P.S. §§ 1–101, *et seq.*

These considerations, however, are not dispositive in this case because one need look no further than the Code's plain language to reach the same outcome as the Majority. Sections 6–691 and 6–692 of the Code plainly vest the Secretary with discretion to create an SBOC when he deems it necessary following a "proper investigation of the district's financial condition." Notably, even where the Secretary of Education finds one or more of the seven criteria listed in § 6–691 to be satisfied, the Code merely authorizes—but does not require—the Secretary, in his judgment, to form an SBOC. Nothing could more clearly demonstrate the General Assembly's intent to grant the Secretary of Education broad discretion to identify and address non-functioning school districts than a statute that depends so heavily for its effectuation on the Secretary's judgment.

An implicit corollary to the Secretary's broad authority to convene an SBOC is the equal and opposite power to dissolve it. *See* PA. CONST. art. VI, § 7 ("Appointed civil officers ... may be removed at the pleasure of the power by which they shall have been appointed."). While it is true that § 6–692 prohibits mid-term removal of SBOC members except upon "clear and convincing evidence of malfeasance or misfeasance in office," it also provides that an SBOC will assume control of a school district "during the period necessary to reestablish a sound financial structure in the district." It cannot be the case that an SBOC must remain convened for as many as five years beyond its necessity. Moreover, there is no reason why dissolution of an SBOC *in toto* should require more or less than its creation when the Code does not so provide. The determination of when a "sound financial structure" has been restored to an afflicted school district must lie, as does the prior authority to convene an SBOC, with the Secretary.

These caveats aside, I agree with the Majority that Judge Colins' factual determinations should not be disturbed where the record bears them out, and under the foregoing analysis those findings are sufficient to support the same disposition.

452

In all other respects not mentioned above, I join the Majority Opinion.

Justice SAYLOR joins this concurring opinion.